```
                                    FILED
                            U.S. DISTRICT COURT
                         EASTERN DISTRICT OF LA

                            2000 OCT -5  AM 10: 15

                              LORETTA G. WHYTE
                                   CLERK
```

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SHANNON M. BRONDUM | CIVIL ACTION |
| VERSUS | NO. 00-0120 |
| ECKERD CORPORATION | SECTION "T" (4) |

This cause came for hearing on a previous date upon the Motion of the Defendant, Eckerd Corporation ("Eckerd"), for Summary Judgment relating to a claim of gender discrimination filed on behalf of the Plaintiff, Shannon M. Brondum ("Plaintiff"). The Court, having studied the legal memoranda and exhibits submitted by the parties, the record, and the applicable law, is fully advised in the premises and ready to rule.

### ORDER AND REASONS

**I. Background**

This case arose as an action for gender discrimination filed by Plaintiff in the 24th Judicial District Court for the Parish of Jefferson, and was removed by Eckerd to this Court on January 12, 2000. (Doc. 1). Plaintiff began her employment with Eckerd at its Store #2033 in Kenner, Louisiana on September 27, 1997 as a cashier, and at that time, she underwent orientation and training including instruction concerning Eckerd's Cash Accountability Program for cashiers. (Eckerd's



DATE OF ENTRY
OCT 5 2000



Memorandum in Support of Motion for Summary Judgment, Plaintiff's Depo., Exh.A, pp.11, 22-23, 25-26). That accountability program has a policy that if a cashier's cash register is out-of-balance, over or under, in excess of five dollars for five times in a rolling twelve month period, then the cashier's employment is terminated. (Id. at 25-26).

Plaintiff's register balances were allegedly off by more than five dollars on six occasions within eleven months: twice on different registers on December 5, 1997; once on August 4, 1998; once on October 1, 1998; once on October 21, 1998; and then the sixth and final time on October 27, 1998. (Eckerd's Memorandum, Exh.C). Plaintiff admits that all of these six were, in fact, shortages, and she has acknowledged by her signature that she received counseling for the first five of these six shortages.[1] (Eckerd's Memorandum, Plaintiff's Depo., Exh.A, p.37; Exh.C). During the course of that eleven months, Plaintiff was retrained three times on cash accountability procedures and was given one extra chance to accurately maintain her register, despite Eckerd's five-time termination policy. (Eckerd's Memorandum, Exs.B, D, E, G). Plaintiff's employment for Eckerd was terminated on October 28, 1998 when she was eight and one half months pregnant.

Plaintiff alleges that she was terminated because of her pregnancy, that other non-pregnant employees with five or more shortages were not terminated, that her register was not short six times, and that her health insurance membership was terminated even before her employment was. (Plaintiff's Memorandum in Opposition to Motion for Summary Judgment, pp.1-2). However, Eckerd argues that other non-pregnant employees were not treated differently, that Plaintiff's register was off by five or more dollars for six times, and that her employment termination had nothing to

---

[1] Plaintiff asserts that she was not counseled or shown anything in relation to the sixth shortage. This is probably because Eckerd had already made a decision to terminate her employment; thus counseling was unnecessary. Moreover, not only does Plaintiff admit on page 37 of her deposition that there were six shortages, but also Eckerd offers significant evidence that all six shortages actually occurred. (Eckerd's Memorandum Exs.C, F, G).

2

do with Plaintiff's pregnancy but was for a legitimate, non-discriminatory reason. (Eckerd's Memorandum, pp.9-12). Thus, Eckerd claims that Plaintiff has not met her burden of establishing a *prima facie* case of sex discrimination and further that has she not met her burden of producing evidence to show that Eckerd's legitimate, non-discriminatory reason is false, and, accordingly, Eckerd moves this Court for Summary Judgment to dismiss Plaintiff's claims.

## II. Legal Analysis

### *Summary Judgment of Employment Discrimination Claim*

The Federal Rules of Civil Procedure provide that summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. Stults v. Conoco, Inc., 76 F.3d 651, 655-56 (5th Cir. 1996) (citing Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 912-13 (5th Cir.) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)), cert. denied, 506 U.S. 832 (1992)). When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. The nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial*." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis supplied); Tubacex, Inc. v. M/V RISAN, 45 F.3d 951, 954 (5th Cir. 1995). Thus, where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." Matsushita Elec. Indus. Co., 475 U.S. at 588.

A claim of discrimination on the basis of pregnancy is analyzed in the same manner as any other discrimination claim brought pursuant to Title VII. See 42 U.S.C. §2000e(k). Specifically, when applying the summary judgment standard to a sex discrimination claim, the plaintiff must first make a *prima facie* showing of the elements of employment discrimination: (1) that she was pregnant and therefore a member of the protected class; (2) that she was otherwise qualified for the position; (3) that she was discharged; and (4) that she was either replaced by someone outside the protected class or otherwise discharged because of the protected trait. See McDonnell Douglas Corp. v Green, 411 U.S. 792, 802 (1973); Bodenheimer v. PPG Industries, Inc. 5 F.3d 955, 957 (5th Cir. 1993).

Then, once the plaintiff makes out a *prima facie* case of discrimination, the burden shifts to the defendant to offer a legally justifiable reason for the termination. Reeves v. Sanderson Plumbing Products, Inc., --- U.S. ----, 120 S.Ct. 2097, 2106 (2000). The defendant must produce evidence that the plaintiff was discharged for a legitimate, nondiscriminatory reason. See id. "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'" Id. (quoting St. Mary's Honor Center v. Hicks, 509 U.S. 502, 509 (1993). The presumption of unlawful discrimination disappears once the employer offers admissible evidence that is sufficient for the trier of fact to conclude that there was a legitimate reason for the discharge. See id.

Because the ultimate burden of proving discrimination lies at all times with the plaintiff, she is then afforded the opportunity to prove that the employer's proffered reasons for termination were not true and that the true reason was, in fact, discrimination. See id. The Supreme Court ruled in Reeves that a *prima facie* showing of the elements of an employment discrimination claim in conjunction with substantial evidence that the employer's stated reason for termination was pretextual, could alone, with no additional evidence of discrimination being offered by the plaintiff,

4

allow a reasonable jury to infer that the employer's motivation for the termination was discriminatory. See 120 S.Ct. at 2106. However, the Reeves Court did caution:

> [t]his is not to say that such a showing by the plaintiff will always be adequate to sustain a jury's finding of liability. Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

Id. at 2108. Thus under Reeves, summary judgment is appropriate, even after a *prima facie* showing of a discrimination claim has been made, if a reasonable factfinder could not find that the employer's nondiscriminatory explanation for the termination was false.

In this case, there is no genuine issue as to any fact material to the reason for Plaintiff's discharge. Since Eckerd has offered a legitimate, nondiscriminatory reason for discharging Plaintiff, she must come forward with specific facts showing that a rational trier of fact could find that Eckerd's discharge of Plaintiff for cash accounting errors was, in fact, pretextual. Plaintiff has not offered this Court relevant facts that create more than a mere metaphysical doubt that she was indeed discharged for her cash register being off by more than five dollars for five or more times. Consequently, no rational trier of fact could find that Plaintiff was terminated because she was pregnant, there is no issue for trial, and summary judgment is appropriate.

Specifically applying the summary judgment standard to Plaintiff's sex discrimination claim, Plaintiff arguably meets her burden of a *prima facie* showing of the elements of sex discrimination. Neither Eckerd nor Plaintiff take issue with the first three elements: pregnancy, qualification, or discharge, but the parties disagree on whether non-pregnant employees were treated more favorably by not being discharged for similar cash accountability errors. Plaintiff asserts that she heard rumors

that two fellow Eckerd cashiers, Ivy Orellana and Mita Patel, violated the Cash Accountability Policy in excess of five times in twelve months but that neither of these non-pregnant employees was discharged.

However, Eckerd offers both employees' personnel records as well as the declaration of Amy Smith, Eckerd's Area Human Resources Representative for South Louisiana, to show that neither of these two employees did in fact violate the Cash Accountability Policy. (Eckerd's Memorandum, Exs. G, G(1), G(2)). Those documents clearly evidence that Ms. Orellana committed no violations. (Id. at G, G(1)). Ms. Patel's record, however, does contain some evidence indicating that there might have been overages or underages of Ms. Patel's register on five occasions in 1997. (Id. at G(1)). Although some of these entries were contested and apparently voided as errors, and although Ms. Smith's declaration attests that there were not five violations by Ms. Patel, the Court, in an abundance of caution and viewing the evidence in the light most favorable to the plaintiff, determines that there could arguably have been an instance of disparate treatment of a non-pregnant employee. Consequently, it is the determination of the Court that Plaintiff has stated, albeit extremely weak, a *prima facie* case of pregnancy discrimination.

Therefore, a presumption of discrimination arises, and the burden to produce a legitimate, nondiscriminatory reason for termination shifts to Eckerd. Eckerd has produced documentary evidence that supports its proffered legitimate reason that Plaintiff was discharged for violating the Cash Accountability Policy as well as evidence of counseling and other evidence of Plaintiff's poor performance. (Eckerd's Memorandum, Exs. A-G). The documents produced show that Plaintiff knew of the policy, that she knew that she violated the policy, that she was extended greater opportunity to improve her performance than was called for by the policy, and finally that Plaintiff was discharged under the guidelines of that policy. (Id.). This evidence is more than sufficient for

6

the trier of fact to conclude that there was a legitimate, non-discriminatory reason for the discharge, and thus, the presumption of unlawful discrimination disappears.

Now, Plaintiff is afforded the opportunity to attempt to prove that the Cash Accountability Policy violations were not the true reason for the discharge and that the true reason was, in fact, pregnancy discrimination. Plaintiff contends that one of her shortages was later resolved, that she was shown nothing to prove the sixth shortage, and that her health insurance was canceled before her termination. (Plaintiff's Memorandum, pp.1-2). However, in her deposition, Plaintiff admits to being short six times within a twelve month period, and she admits that all of these documented shortages were correct. (Eckerd's Memorandum, Exh.A, p.37). Additionally, her accusation that her health coverage was terminated before "the purported shortage of October 27, 1998," apparently insinuating that the accounting violation was manufactured to avoid maternity expenses to Eckerd's insurance, is hardly relevant. Plaintiff admits that the health coverage plan which she elected would not have covered her maternity-related absence because she had not elected short term disability coverage. (Eckerd's Memorandum, Exh.A, pp.43-45). Regardless, Ms. Smith, Eckerd's Human Resources Representative, made the decision to terminate Plaintiff's employment over the phone while having no knowledge of the pregnancy. (Eckerd's Memorandum, Exh.G). Plaintiff offers this Court no facts relevant to showing that Eckerd's true reason for her discharge was anything other than her accounting violations. Consequently, there is no basis on which a jury could infer that Plaintiff was actually discharged because of her pregnancy and not because of her violation of Eckerd's Cash Accountability Policy. Thus, Eckerd's Motion for Summary Judgment must be **GRANTED**.

### III. Conclusion

This Court is of the opinion that Plaintiff has presented, even viewed in the light most favorable to her, an extremely weak *prima facie* case of sex discrimination under Title VII. Moreover, the weakness of that *prima facie* case in conjunction with Plaintiff's failure to rebut Eckerd's legitimate, nondiscriminatory reason for her termination requires that this Court determine that no reasonable jury could find that Plaintiff's discharge was the result of pregnancy discrimination. Eckerd's Motion for Summary Judgment must be granted.

Accordingly,

**IT IS ORDERED** that Eckerd's Motion for Summary Judgment (Doc.19) be, and the same hereby is **GRANTED**.

**IT IS FURTHER ORDERED** that the Plaintiff's claim against Eckerd Corporation be, and the same hereby is **DISMISSED**.

New Orleans, Louisiana, this _____ day of October, 2000.

G. Thomas Porteous, Jr.
United States District Judge